# EXHIBIT A-1

<u>MORTGAGE NOTE</u>

$487,200.00

October 6, 2021
New York, New York

**FOR VALUE RECEIVED, HAPPY HOME LIFE LLC,** a New York Limited Liability Company, maintaining its principal office for the transaction of business at 244 Fifth Avenue, Ste R200, New York NY 10001 ("Maker"), Promises to pay to **INSULA CAPITAL GROUP LLC ISAOA/ATIMA**, or order, at its office at 627 Horseblock Road, Farmingville, NY 11738 ("Lender"), or at such other place as may be designated in writing by the holder of this Note, the principal sum of **FOUR HUNDRED EIGHTY SEVEN THOUSAND TWO HUNDRED AND 00/100 ($487,200.00) on October 6, 2022 ("Maturity Date")** with interest thereon, payable in arrears, to be computed from the date hereof until said principal sum shall be fully paid on a daily basis and on the basis of a three hundred sixty (360) day year and the actual number of days elapsed, at the rate of **nine and five tenths percent (9.5%) per annum.** Maker shall pay to the Lender consecutive monthly installments of interest only commencing on the date hereof for the period from the date hereof through **October 31, 2021** on the principal actually disbursed which on the day hereof is in the amount of **$450,000.00** and thereafter in arrears on **December 1, 2021** and on the first day of each and every month thereafter through and until the Maturity Date. **The entire unpaid balance of principal together with accrued interest thereon shall be paid on the Maturity Date. Maker shall direct all monthly payments to 7525 Topanga Canyon Blvd., Canoga Park, CA 91303-1214.**

1.    <u>Default Interest Rate</u>:  If the principal balance of this Note shall not be paid at its maturity, or in the Event of a Default as defined in the Mortgage (as hereinafter defined), interest thereon shall thereafter be computed and paid at the rate of twenty-four (24%) percent per annum ("Default Rate"), but in no event in excess of the maximum rate allowed by law to be charged to the Mortgagor

2.    <u>Default</u>: IT IS HEREBY EXPRESSLY AGREED that the said principal sum and all accrued interest thereon shall become due at the option of the holder of this Note on the happening of any default or event by which, under the terms of the Mortgage, said principal sum may or shall become due and payable; also, that all of the terms, covenants, conditions and agreements contained in said Mortgage are hereby made part of this instrument.

3.    <u>Voluntary Prepayment</u>: The indebtedness evidenced by this Note may be prepaid in whole or in part without penalty upon not less than five (5) days prior written notice to Lender together with payment to Lender of all accrued and unpaid interest, late charges and other sums then due and payable under this Note or the Mortgage.

4.    <u>Late Charge</u>:  Notwithstanding any grace period set forth in the Mortgage, Lender may collect a late charge, not to exceed five cents for each dollar of each installment of principal and/or interest or any other sums due under this Note or the Mortgage which is received more than ten (10) days in arrears from its due date, which late charge shall be due and payable with the next payment due under this Note.

5.    <u>Miscellaneous</u>:

      (a) Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived.

1

(b) Payments received by the Lender pursuant to the terms of this Note or any other document or instrument executed and delivered by Maker to the Lender in connection with Maker's obligations to the Lender hereunder (hereinafter collectively referred to as the "Loan Documents") shall be applied in the following manner: (i) first, to the payment of all expenses, charges, costs and fees incurred by or payable to the Lender and for which Maker is obligated pursuant to the terms of this Note or the other Loan Documents; (ii) second, to the payment of all interest accrued hereunder through and including the date of such payment; and (iii) third, to the payment of the principal amount of this Note.

(c) Without limiting any other rights that the Lender may have, the Maker hereby authorizes the Lender from time to time to charge any account of the Maker with the Lender for interest or principal or any other sums coming due under this Note or the Mortgage, but if any such charge creates an overdraft in such account, interest, principal and/or any such other sum shall be deemed not to have been paid to the extent of such overdraft, notwithstanding any internal treatment by the Lender to the contrary.

(d) No failure on the part of the Lender to exercise, and no delay in exercising, any right or remedy hereunder, under the Mortgage or the Loan documents shall operate as a waiver thereof; nor shall any single or partial exercise by the Lender of any right or remedy hereunder, under the Mortgage or the Loan Documents preclude any other or further exercise thereof or the exercise of any other right or remedy that the Lender may have under this Note, the Mortgage, the Loan Documents, or applicable law or otherwise. The receipt by the Lender of payments of interest or principal hereunder or any other sums due hereunder or under the Mortgage or the Loan Documents with knowledge on the part of the Lender of the existence of a default hereunder or under the Mortgage or the Loan Documents shall not be deemed a waiver of such default. Any payment by the Maker or receipt by the Lender of less than the full amount of interest, principal and/or other sums due hereunder or under the Mortgage or the Loan Documents shall be deemed to be on account of all such interest, principal and other sums and shall be applied against such interest, principal and/or other sums in such manner and order as the Lender shall choose in its sole and absolute discretion. The rights and remedies provided in this Note, the Mortgage and the Loan Documents are cumulative, not exclusive and are in addition to all others that may be provided by other agreements and documents and applicable law.

(e) The Maker hereby further agrees, on demand, to pay, reimburse and satisfy in full any and all expenses that may be paid or incurred by the Lender in the collection of all or any portion of the indebtedness evidenced hereby or the exercise or enforcement of any one or more of the other rights, powers, privileges, and remedies of the Lender hereunder, under the Mortgage or any other instrument executed and delivered in connection herewith, irrespective of the manner or success of any such collection, exercise or enforcement. Any such expenses shall bear interest at the Default Rate from the date the same are incurred by the Lender until repaid to it by the Maker.

(f) The Maker agrees that this Note shall be construed in accordance with and governed by the laws of the State of New York. The Maker further agrees that in any action or proceeding brought by the Lender against the Maker in connection with this Note (i) the Maker and, by its

2

acceptance hereof, the Lender, shall and do hereby waive trial by jury, (ii) service of any summons and complaint or other process in any action or proceeding may be made by registered or certified mail directed to the Maker at its address hereinabove set forth, the Maker hereby waiving personal service thereof, and (iii) within thirty (30) days after such mailing the Maker shall appear or answer to any summons and complaint or other process, and should the Maker fail to appear or answer within said thirty-day period, the Maker shall be deemed in default and judgment may be entered by the Lender against the Maker for the amount as demanded in any summons or complaint or other process so served.

(g) The Maker hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by the Lender arising out of, or in any way connected with, this Note or the Mortgage.

(h) The terms and provisions of this Note are severable and, if any term or provision shall be determined to be superseded, illegal, invalid or otherwise unenforceable in whole or in part pursuant to applicable law by a governmental authority having jurisdiction, such determination shall not in any manner impair or otherwise affect the validity, legality or enforceability of that term or provision in any other jurisdiction or any of the remaining terms and provisions of this Note in any jurisdiction.

(i) In the event of a judgment on this Note, the Maker agrees to pay to the Lender on demand all reasonable costs and expenses incurred by the Lender in satisfying such judgment, including without limitation, reasonable fees and expenses of the Lender's counsel; it being expressly understood that such agreement by the Maker to pay all post-judgment costs and expenses of the Lender is absolute and unconditional and (i) shall survive (and not merge into) the entry of a judgment for amounts owing hereunder, and (ii) shall not be limited regardless of whether this Note is secured or unsecured, and regardless of whether the Lender exercises any available rights or remedies against any collateral for this Note.

(j) If the holder of this Note retains legal counsel to collect on this Note or any interest thereon or on any other obligation owed by the Maker on the Note, the Mortgage or the Loan Documents, including but not limited to a foreclosure proceeding or an action on any guaranty, or to defend the lien of the Mortgage or other collateral, then in such event the Maker agrees to additionally pay to the holder of this Note the reasonable fees of the attorney for the Holder hereof which sums shall be included in any judgment of foreclosure or otherwise, and shall be in addition to the recovery of costs, disbursements and allowances otherwise recoverable in such action pursuant to the applicable provisions of New York law.

(k) This Note is secured by a first Mortgage ("Mortgage") made by the Maker to the Lender of even date herewith, covering property in the **County of Nassau, Town of Hempstead and State of New York and being commonly known as and by street 96 New Hyde Park Road, Franklin Square NY 11010 (SECTION 33 BLOCK 397 LOTS 20-21).**

3

(l) **MARITA ROSADO**, guaranteed payment of the indebtedness referenced in this Note.

(m) Upon receipt of an affidavit of an officer of the Lender as to the loss, theft, destruction, or mutilation of this Note, or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of such Note or other security document, Maker will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

(n) This Note may not be changed or terminated orally. This Note shall bind the heirs, legal representatives, successors and assigns of the Maker and shall inure to the benefit of the holder hereof and its successors and assigns.

(o) Cross-Default. Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender, shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section: (a) "Affiliate" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person; (b) "Control" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means; and (c) "Person" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

(p) <u>Payments Past Maturity</u>. Maker hereby authorizes Lender, at Lender's sole discretion, to instruct Lender's servicer or subservicer to continue accepting payments from Maker past the then original Maturity Date of this Note at the original terms stated herein and in the other Loan Documents thereto. Maker hereby authorizes Lender and its servicer and subservicer to either (i) initiate, and/or continue the initiation of, ACH direct debit transactions from Maker's bank account supplied to Lender or its servicer or subservicer; and/or (ii) otherwise accept monthly payments due and owing on this Note in the form of paper checks or as otherwise agreed by and between Maker and Lender's servicer or subservicer. If the then original Maturity Date of this Note has passed, the continued acceptance of payments by Lender shall be at the sole and absolute discretion of Lender, and Lender shall not be obligated to accept such payments. Lender reserves the right to cease or discontinue acceptance of any such payments from Maker at any time and to pursue all of its available remedies under this Note and in any other Loan Documents thereto.

(q) <u>Usury Savings Clause</u>: Notwithstanding any provision herein, the total liability for payments in the nature of interest, if any, shall not exceed the applicable limits imposed by any relevant state or federal interest rate laws. If any payments in the nature of interest at the Default Rate, or other charges made hereunder are held to be in excess of the applicable limits imposed by any applicable state or federal

4

laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the indebtedness evidenced thereby shall be reduced by such amount, or if such excessive interest exceeds the unpaid principal balance of this Note, such excess shall be refunded to Maker. All sums paid pursuant to this Note, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the actual rate of interest is uniform throughout the actual term of this Note or does not exceed the maximum lawful rate throughout the entire term of this Note as appropriate.

(r) TERMINATION FEE: Upon payoff of the Loan Borrower shall pay to the Lender the sum of $0.00 representing a termination fee ("Termination Fee"). Lender shall not issue a discharge of the Mortgage nor will Lender assign the Mortgage unless the Termination Fee has been paid.

Maker:
HAPPY HOME LIFE LLC

BY: _____
MARITA ROSADO, Managing Member

Property Address: 96 New Hyde Park Road, Franklin Square NY 11010

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK )

On **OCTOBER 6, 2021** before me, the undersigned, personally appeared **MARITA ROSADO**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MICHAEL J. OZIEL
Notary Public, State of New York
No. 02OZ6333626
Qualified in Nassau County
Commission Expires: 11/30/2023

5

ALLONGE

FOR PURPOSES OF ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

NOTE DATED: October 6, 2021          ORIGINAL PRINCIPAL:
                                     $487,200.00

BORROWER'S NAME: HAPPY HOME LIFE LLC

PROPERTY ADDRESS: 96 New Hyde Park Road, Franklin Square, N.Y.

This being the Note for which a mortgage was duly executed and delivered as a security for said Note; the mortgage having been recorded in the **Nassau County Clerk's Office** on 10/21/2021 in Book 45969, Page 644.

WITHOUT RECOURSE PAY TO THE ORDER OF

LOAN FUNDER LLC, SERIES 26432
ITS SUCCESSORS AND/OR ASSIGNS,

MERS, as Nominee for INSULA CAPITAL GROUP LLC

NAME: _____

TITLE: _____

ALLONGE

FOR PURPOSES OF ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

NOTE DATED: October 6, 2021          ORIGINAL PRINCIPAL:
                                     $487,200.00

BORROWER'S NAME: HAPPY HOME LIFE LLC

PROPERTY ADDRESS: 96 New Hyde Park Road, Franklin Square, N.Y.

This being the Note for which a mortgage was duly executed and
delivered as a security for said Note; the mortgage having been
recorded in the Nassau County Clerk's Office on 10/21/2021 in
Book 45969, Page 644.

WITHOUT RECOURSE PAY TO THE ORDER OF

LOAN FUNDER LLC, SERIES 26432
ITS SUCCESSORS AND/OR ASSIGNS,


INSULA CAPITAL GROUP LLC

NAME:

TITLE: Managing Partner

### NOTE ALLONGE

**ALLONGE TO THAT CERTAIN NOTE DATED:** October 6, 2021

**LOAN NUMBER:** 26432

**IN THE AMOUNT OF:** $487,200.00

**BORROWER NAME:** HAPPY HOME LIFE LLC

**COLLATERAL ADDRESS:** 96 New Hyde Park Road, Franklin Square, NY 11010

**FROM:** Loan Funder LLC, Series 26432

**TO:** HOF I Grantor Trust 5

PAY TO THE ORDER OF HOF I Grantor Trust 5, its successors and/or assigns, without recourse and without representation or warranty of any kind, express or implied.

ON THE 16 DAY OF August 2022

Loan Funder LLC, Series 26432

By: _____

Name: Lucas Sambrook
Title: Authorized Signatory

# EXHIBIT A-2

# **** Electronically Filed Document ****

Instrument Number: 2021-137761

Recorded As:        EX-M01 - MORTGAGE

Recorded On:        October 21, 2021

Recorded At:        10:43:52 am          Receipt Number:    2413639

Number of Pages:    27                   Processed By:      001 RGE

Book-VI/Pg:         Bk-M  Vl-45969  Pg-644

Total Rec Fee(s):   $5,560.60

## ** Examined and Charged as Follows **

01 - MORTGAGE              $ 175.00      EX-Blocks - Mortgages - $300        $ 300.00

| | Tax Amount | Consld Amt | RS#/CS# | | |
|---|---|---|---|---|---|
| Tax-Mortgage HEMPSTEAD | $ 5085.60 | $ 487200.00 | DM 37567 | Basic | $ 2436.00 |
| | | | | Local NY CITY | $ 0.00 |
| | | | | Additional MTA | $ 1431.60 |
| | | | | Spec ASST | $ 1218.00 |
| | | | | Spec ADDL SONYMA | $ 0.00 |
| | | | | Transfer | $ 0.00 |

Tax Charge:               $ 5085.60

### Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 33 | 397 | 20 | | HEMPSTEAD |
| 33 | 397 | 21 | | HEMPSTEAD |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law



*Maureen O'Connell*
County Clerk Maureen O'Connell

<u>First Mortgage, Security Agreement and
Assignment of Rents and Leases</u>

**Between**

## HAPPY HOME LIFE LLC

("Mortgagor")

**And**
**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., (MERS) AS NOMINEE FOR
INSULA CAPITAL GROUP LLC ISAOA/ATIMA**

("Mortgagee")

<u>County of Nassau, Town of Hempstead and State of New York
96 New Hyde Park Road, Franklin Square NY 11010
(Section 33 Block 397 Lots 20-21)</u>

<u>RECORD AND RETURN</u>

INSULA CAPITAL GROUP LLC ISAOA/ATIMA
627 Horseblock Road
Farmingville, NY 11738

I

After Recording Return to:

**HAPPY HOME LIFE LLC**
**$487,200.00**
**OCTOBER 6, 2021**

**INSULA CAPITAL GROUP LLC ISAOA/ATIMA**
627 Horseblock Road
Farmingville, NY 11738

<u>**MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**</u>
**MERS MIN #: 101516200100264323**

KNOW ALL MEN BY THESE PRESENTS that **HAPPY HOME LIFE LLC**, a New York Limited Liability Company, having an office at 244 Fifth Avenue, Ste R200, New York NY 10001 ("Mortgagor" or "Borrower", as the case may be), for the consideration of **FOUR HUNDRED EIGHTY SEVEN THOUSAND TWO HUNDRED AND 00/100 ($487,200.00),)** and other good and valuable consideration, received to its full satisfaction from **INSULA CAPITAL GROUP LLC ISAOA/ATIMA**, or order, at its office at **627 Horseblock Road, Farmingville, NY 11738** ("Lender"), does hereby give, grant, bargain and confirm unto Mortgage Electronic Registration Systems, Inc. ("MERS" or "Mortgagee") (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following:

(A) All right, title and interest in and to those premises more commonly known as **96 New Hyde Park Road, Franklin Square NY 11010 (Section 33 Block 397 Lots 20-21)** (the "Property") which is more particularly described in **SCHEDULE A** (the "Premises") which is attached hereto and made a part hereof;

(B) TOGETHER WITH **(1)** all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Premises, and **(2)** all building materials, supplies and other property stored at or delivered to the Premises or any other location for incorporation into the improvements located or to be located on the Premises, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, and used or intended to be used in connection with, or with the operation of, or the occupancy of, the Premises, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and all of the right, title and interest of Mortgagor in and to such personal property which, to the fullest extent permitted by law, shall be conclusively deemed fixtures and a part of the real property encumbered hereby (the "Improvements");

(C) TOGETHER WITH **(1)** all estate, right, title and interest of Mortgagor, of whatever character, whether now owned or hereafter acquired, in and to **(a)** all streets, roads and public places, open or proposed, in front of or adjoining the Premises, and the land lying in the bed of such streets, roads and public places, and **(b)** all other sidewalks, alleys, ways,

2

passages, strips and gores of land adjoining or used or intended to be used in connection with any of the property described in **paragraphs (A) and (B)** hereof, or any part thereof; and **(2)** all water courses, water rights, easements, rights-of-way and rights of use or passage, public or private, and all estates, interest, benefits, powers, rights (including, without limitation, any and all lateral support, drainage, slope, sewer, water, air, mineral, oil, gas and subsurface rights), privileges, licenses, profits, rents, royalties, tenements, hereditaments, reversions and subreversions, remainders and subremainders and appurtenances whatsoever in any way belonging, relating or appertaining to any of the property described in **paragraphs (A) and (B)** hereof, or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor; and

(D) TOGETHER WITH **(a)** all estate, right, title and interest of Mortgagor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in **paragraphs (A), (B) and (C)** hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in **paragraphs (A), (B) or (C)** hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in **paragraphs (A), (B) or (C)** hereof, or any part thereof; and Lender is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefor, and (if it so elects) to apply the same, after deducting therefrom any expenses incurred by Lender in the collection and handling thereof, toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable; and **(b)** all contract rights, general intangibles, governmental permits, licenses and approvals, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums, arising from or relating to the property described in **paragraphs (A), (B) and (C)** above; and **(c)** all proceeds, products, replacements additions, substitutions, renewals and accessions of and to the property described in **paragraphs (A), (B) and (C)**.

All of the property described in **paragraphs (A), (B), (C) and (D)** above, and each item of property therein described, is herein referred to as the "Mortgaged Property".

TO HAVE AND TO HOLD the above granted and bargained Premises, with the appurtenances thereof, unto it, the said Lender, its successors and assigns forever, to it and their own proper use and behoof. And also, the said Mortgagor does for itself, its successors and assigns, covenant with the said Lender, its successors and assigns, that at and until the ensealing of these presents, they are well seized of the Premises as a good indefeasible estate in FEE SIMPLE; and have good right to bargain and sell the same in manner and form as is above written; and that the same is free and clear of all encumbrances whatsoever.

AND FURTHERMORE, Mortgagor does by these presents bind itself, its legal representatives and its successors and assigns forever to WARRANT AND DEFEND the above granted and bargained Mortgaged Property to MERS, its successors and assigns, against all claims and demands whatsoever.

## THE CONDITION OF THIS MORTGAGE IS SUCH THAT:

WHEREAS, MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

WHEREAS, Mortgagor is indebted to Lender by virtue of a commercial loan transaction (the "Loan") in the sum of **$487,200.00** as evidenced by (1) a certain Mortgage Note in the principal amount of **$487,200.00** (as same may be amended, restated, or modified from time to time, the "Note") dated **October 6, 2021** executed by Mortgagor and delivered to Lender, with all amounts remaining unpaid thereon being finally due and payable on **October 6, 2022** and (2) those certain Loan Documents as defined below (as same may be amended, restated, or modified from time to time, "Loan Documents") of even date herewith;

WHEREAS, the terms and repayment of such obligations of the Mortgagor are set forth in the Note;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, the Mortgagor is hereby executing this Mortgage in favor of MERS;

WHEREAS, Lender has agreed to provide financing for the purchase and renovations of the premises located at: **96 New Hyde Park Road, Franklin Square NY 11010 (Section 33 Block 397 Lots 20-21)** and

WHEREAS, Mortgagor has agreed to grant MERS a mortgage in the Premises as collateral for the refinancing of the premises located at: **96 New Hyde Park Road, Franklin Square NY 11010 (Section 33 Block 397 Lots 20-21);** and

WHEREAS, buildings and/or improvements on the Mortgaged Property are in the process of construction or repair, or are to be constructed, erected or repaired; and

WHEREAS, Mortgagor represents and warrants that it has full power and authority to execute and deliver the Note, this Mortgage, and all other documents, agreements and instruments required of it by Lender in connection with the making of the Loan (the Note, this Mortgage, and all such other documents, agreements and instruments executed and delivered by Mortgagor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, Mortgagor hereby covenants and agrees with Lender as follows:

## ARTICLE ONE: COVENANTS OF MORTGAGOR

**1.01    Performance of Loan Documents.** Mortgagor shall cause to be performed, observed and complied with all provisions hereof, of the Note and each of the Loan Documents, and will promptly pay to Lender the principal, with interest thereon, and all other sums required to be paid by Mortgagor under the Note and pursuant to the provisions of this Mortgage and of the Loan Documents when

payment shall become due (the entire principal amount of the Note, all accrued interest thereon and all obligations and indebtedness thereunder and hereunder and under all of the Loan Documents described being referred to herein as the "Indebtedness").

**1.02    General Representations, Covenants and Warranties.** Mortgagor represents and covenants that **(a)** Mortgagor is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency case or proceeding is pending or contemplated by or against Mortgagor; **(b)** all reports, statements and other data furnished by Mortgagor to Lender in connection with the Loan are true, correct and complete in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading; **(c)** this Mortgage, the Note and all other Loan Documents are legal, valid and binding obligations of Mortgagor enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contract or agreement to which Mortgagor is a party or by which Mortgagor may be bound and do not contravene any law, order, decree, rule or regulation to which Mortgagor is subject; **(d)** there are no actions, suits or proceedings pending, or to the knowledge of Mortgagor threatened, against or affecting Mortgagor or any part of the Mortgaged Property; **(e)** all costs arising from construction of any improvements and the purchase of all equipment located on the Mortgaged Property which have been incurred prior to the date of this Mortgage have been paid; **(f)** the Mortgaged Property has frontage on, and direct access for, ingress and egress to the street(s) described in any survey submitted to Lender; **(g)** electric, sewer, water facilities and any other necessary utilities are, or will be, available in sufficient capacity to service the Mortgaged Property satisfactorily during the term of the Note, and any easements necessary to the furnishing of such utility service by Mortgagor have been or will be obtained and duly recorded (evidence satisfactory to Lender that all utility services required for the use, occupancy and operations of the Mortgaged Property shall be provided to Lender immediately upon Lender's request); **(h)** there has not been, is not presently and will not in the future be any activity conducted by Mortgagor or any tenant at or upon any part of the Mortgaged Property that has given or will give rise to the imposition of a lien on any part of the Mortgaged Property; **(i)** Mortgagor is not in default under the terms of any instrument evidencing or securing any indebtedness of Mortgagor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, or the passage of time or both; and **(j)** Lender has legal capacity to enter into the Loan and to execute and deliver the Loan Documents, and the Loan Documents have been duly and properly executed on behalf of Lender.

**1.03    Compliance with Laws; Permits; Notice.** Mortgagor covenants and warrants that the Mortgaged Property presently complies with and shall continue to comply with all applicable restrictive covenants, applicable zoning, wetlands and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, statutes, rules, ordinances, codes, and regulations, and Mortgagor has not received any notice that the Mortgaged Property is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations. If Mortgagor receives notice from any federal, state or other governmental body that it is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations, Mortgagor shall provide Lender with a copy of such notice promptly. Mortgagor agrees to comply with all federal, state and municipal local laws, statutes, rules, ordinances, codes and regulations in connection with the construction and development of the Mortgaged Property. Mortgagor has obtained all licenses, permits, authorizations, consents and approvals necessary for the construction and development of the Mortgaged Property, and all such licenses, permits, authorizations, consents and approvals are in

full force and effect and all appeal periods have expired. Unless required by applicable law or unless Lender has otherwise agreed in writing, Mortgagor shall not allow changes in the nature of the occupancy for which the Premises were intended at the time this Mortgage was executed. Mortgagor shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent. Mortgagor warrants and represents that its use, and the use by any of its tenants, of the Mortgaged Property is in accordance and compliance with the terms and conditions of any and all rules, regulations, and laws that may be applicable to the Mortgaged Property, including, without limitation, all federal, state and local laws, ordinances, rules and regulations regarding hazardous and toxic materials and that Mortgagor shall maintain and continue such compliance and shall require and ensure its tenants' compliance with the same. Mortgagor shall maintain or shall cause their agent to maintain in its possession, available for the inspection of the Lender, and shall deliver to the Lender, upon three (3) business days' request, evidence of compliance with all such requirements. Mortgagor hereby indemnifies and holds Lender free of and harmless from and against any and all claims, demands, damages or liabilities that Lender may incur with regard thereto.

## 1.04    Taxes and Other Charges.

**1.04.1  Impositions.** Subject to the provisions of this **Section 1.04**, Mortgagor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Mortgaged Property or any part thereof, or which shall become payable with respect thereto. Mortgagor shall deliver to Lender, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true Photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Lender.

### 1.04.2  Insurance.

(a)    Mortgagor shall keep all buildings erected on or to be erected on the Mortgaged Property insured against loss by fire and such other hazards as the Lender may require and Mortgagor shall obtain and maintain insurance with respect to other insurable risks and coverage relating to the Mortgaged Property including, without limitation, fire, builder's risk, worker's compensation, physical damages, loss of rentals or business interruption, earthquake (if applicable), and liability insurance, all such insurance to be in such sums and upon such terms and conditions as Lender reasonably may require, with loss proceeds by the terms of such policies made payable to the Lender as its interest may appear. Mortgagor covenants that all insurance premiums shall be paid not later than fifteen (15) days prior to the date on which such policy could be cancelled for non-payment. If, to Mortgagor's knowledge, any portion of the Mortgaged Property is in an area identified by any federal governmental authority as having special flood hazards, and flood insurance is available, a flood insurance policy meeting the current guidelines of FEMA's Federal Insurance and Mitigation Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not

less than the least of (1) the outstanding principal balance of the Loan, (2) the full insurable value of the Mortgaged Property, and (3) the maximum amount of insurance available under the Flood Disaster Protection Act of 1973, as amended. All such insurance policies (collectively, the "hazard insurance policy") shall contain a standard Lender clause naming the Lender and its successors and assigns as beneficiary, and may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the Lender.

**(b)**     Such insurance companies shall be duly qualified as such under the laws of the states in which the Mortgaged Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and companies whose claims paying ability is rated in the two highest rating categories by A.M. Best with respect to hazard and flood insurance. Such insurance shall be in amounts not less than the greater of: **(i)** the outstanding principal balance of the Loan, or **(ii)** the amount necessary to avoid the operation of any co-insurance provisions with respect to the Premises.

**(c)**     All such policies shall provide for a minimum of thirty (30) days prior written cancellation notice to Lender. Lender, upon its request to Mortgagor, shall have the custody of all such policies and all other policies which may be procured insuring said Mortgaged Property, the same to be delivered, to Lender at its office and all renewal policies to be delivered and premiums paid to Lender at its office at least twenty (20) days before the expiration of the old policies; and Mortgagor agrees that upon failure to maintain the insurance as above stipulated or to deliver said renewal policies as aforesaid, or to pay the premiums therefor, Lender may, without obligation to do so, procure such insurance and pay the premiums therefor and all sums so expended shall immediately be paid by Mortgagor and unless so paid, shall be deemed part of the debt secured hereby and shall bear interest at the rate set forth in the Note, and thereupon the entire principal sum unpaid, including such sums as have been paid for premiums of insurance as aforesaid, and any and all other sums which shall be payable hereunder shall become due and payable forthwith at the option of Lender, anything herein contained to the contrary notwithstanding. In case of loss and payment by any insurance company, the amount of insurance money received shall be applied either to the Indebtedness secured hereby, or in rebuilding and restoring the damaged property, as Lender may elect.

**(d)**     Mortgagor has not engaged in and shall not engage in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback, or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm, or other person, and no such unlawful items have been received, retained, or realized by Mortgagor.

**(e)**     No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy or bankruptcy bond, irrespective

of the cause of such failure of coverage.

**1.04.3 Deposits for Impositions and Insurance.** Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Lender, after failure by Mortgagor to pay any of the amounts specified in **Sections 1.04.1 or 1.04.2**, Mortgagor shall deposit with Lender on the first day of each month an amount equal to one twelfth (1/12th) of the sum of: **(i)** the aggregate annual payments for the Impositions; **(ii)** the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Mortgagor under this Mortgage; and **(iii)** all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Mortgaged Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Mortgaged Property or any part thereof ((**i**), (**ii**), and (**iii**), collectively, the "Annual Payments"). Such sums will not bear interest and are subject to adjustment or additional payments in order to assure Lender that it will have the full amount of any payment on hand at least one (1) month prior to its due date. Lender shall hold said sums in escrow to pay said Annual Payments in the manner and to the extent permitted by law when the same become due and payable. Notwithstanding anything herein to the contrary, however, such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Lender. If the total payments made by Mortgagor to Lender, on account of said Annual Payments up to the time when the same become due and payable, shall exceed the amount of payment for said Annual Payments actually made by Lender, such excess shall be credited by Lender against the next payment or payments due from Mortgagor to Lender on account of said Annual Payments. If, however, said payments made by Mortgagor shall not be sufficient to pay said Annual Payments when the same become due and payable, Mortgagor agrees to promptly pay to Lender the amount necessary to make up any deficiency. In case of default in the performance of any of the agreements or provisions contained in the Note, Lender may, at its option, at any time after such default, apply the balance remaining of the sums accumulated, as a credit against the principal or interest of the mortgage Indebtedness, or both.

**1.04.4 Late Charge.** Lender may collect a "late charge" of five percent (5%) on any payment or installment due or required to be paid pursuant to the terms of this Mortgage or the Note which is not paid within ten (10) days of when the same is required to be paid to cover the extra expenses involved in handling such delinquent payment.

**1.04.5 Proof of Payment.** Upon request of Lender, Mortgagor shall deliver to Lender, within twenty (20) days after the due date of any payment required in this **Section 1.04**, proof of payment satisfactory to Lender.

**1.05    Condemnation.** Lender shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of, any damage or taking through condemnation, eminent domain or the like, and Lender is hereby authorized, at its option, to commence, appear in and prosecute in its own or Mortgagor's name any action or proceeding relating to any such condemnation, taking or the like and to settle or compromise any claim in connection therewith.

**1.06    Care of Mortgaged Property; Demolition and Alteration.** Mortgagor shall maintain the Mortgaged Property in good condition and repair, shall not commit or suffer any waste of the Mortgaged Property, and shall comply with or cause to be complied with, all statutes, laws, rules, ordinances and requirements of any governmental authority relating to the Mortgaged Property; and

8

Mortgagor shall promptly repair, restore, replace or rebuild any part of the Mortgaged Property now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to **in Section 1.05**. Mortgagor shall complete and pay for, within a reasonable time, any structure in the process of construction on the Mortgaged Property at any time during the term of the Loan; and Mortgagor shall not initiate, join in, or consent to any change in any private restrictive covenants, or private restrictions, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, without the written consent of Lender. Mortgagor agrees that no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished, or materially altered, without the prior written consent of Lender, except that Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such equipment as from time to time may become worn out or obsolete, provided that simultaneously with or prior to such removal any such equipment shall be replaced with other equipment of value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien of this Mortgage.

### 1.07    Transfer and Encumbrance of Mortgaged Property.

(a)    Mortgagor shall not sell, convey, transfer, suffer any type of change in title or ownership, lease, assign or further encumber any interest in any part of the Mortgaged Property, without the prior written consent of Lender. Any such sale, conveyance, transfer, pledge, lease, assignment or encumbrance made without Lender's prior written consent shall be null and void and shall constitute a default hereunder. Mortgagor shall not, without the prior written consent of Lender, permit any further assignment of the rents, royalties, issues, revenues, income, profits or other benefits from the Mortgaged Property, or any part thereof, and any such assignment without the prior written consent of Lender shall be null and void and shall constitute a default hereunder. Mortgagor agrees that in the event the ownership of the Mortgaged Property or any part thereof is permitted by Lender to be vested in a person other than Mortgagor, Lender may, without notice to Mortgagor, deal in any way with such successor or successors in interest with reference to this Mortgage and the Note and other sums hereby secured without in any way vitiating or discharging Mortgagor's liability hereunder or upon the Note and other sums hereby secured. No sale of the Mortgaged Property and no forbearance to any person with respect to this Mortgage and no extension to any person of the time for payment of the Note and other sums hereby secured given by Lender shall operate to release, discharge, modify, change or affect the original liability of Mortgagor either in whole or in part. Furthermore, Mortgagor does hereby agree to mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the Property.

(b)    If Mortgagor shall sell, convey, assign or transfer all or any part of the Mortgaged Property or any interest therein or any beneficial interest in Mortgagor without Lender's prior written consent, Lender may, at Lender's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner on the Indebtedness, declare

the Indebtedness to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment, lease or transfer, and upon such declaration the entire unpaid balance of the Indebtedness shall be immediately due and payable.

(c)    Mortgagor shall keep the Mortgaged Property free from mechanics' liens, materialmen's liens and encumbrances. If any prohibited lien or encumbrance is filed against the Mortgaged Property, Mortgagor shall cause the same to be removed and discharged of record within thirty (30) days after the date of filing thereof.

(d)    Mortgagor shall obtain, upon request by Lender, from all persons hereafter having or acquiring any interest in or encumbrance on the Mortgaged Property or the said equipment or accessions, a writing duly acknowledged, and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Mortgage and no offsets or defenses exist in favor thereof against this Mortgage or the Note hereby secured, and deliver such writing to Lender.

**1.08    Further Assurances.** At any time and from time to time upon Lender's request, Mortgagor shall make, execute and deliver, or cause to be made, executed and delivered, to Lender and, where appropriate, shall cause to be recorded or filed, and from time to time thereafter to be re-recorded and refiled, at such time and in such offices and places as shall be deemed desirable by Lender, any and all such further mortgages, instruments of further assurance, certificates and such other documents as Lender may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve, the obligations of Mortgagor under the Note and this Mortgage, the lien of this Mortgage as a lien upon all of the Mortgaged Property, and unto all and every person or persons deriving any estate, right, title or interest under this Mortgage. Upon any failure by Mortgagor to do so, Lender may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Lender the agent and attorney-in-fact of Mortgagor to do so.

**1.09    Uniform Commercial Code Security Agreement and Fixture Filing.**

a)    That this Mortgage shall be deemed a Security Agreement as defined in the Uniform Commercial Code of the State of New York and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be (i) as prescribed herein, (ii) by general law, or (iii) as to such part of the security which is also reflected in a financing statement filed by the Mortgagee, by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Mortgagee's sole election. The filing of such a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this declaration and hereby stated intention of the parties hereto, that all items of Building Equipment and other property used in connection with the production of income from the Premises (furniture only excepted) or adapted for use therein and/or which is described or reflected in this Mortgage are, and at all times and for all purposes and in all proceedings, both legal and equitable, shall be, regarded as part of the real estate irrespective of whether or not (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the

better identification of certain equipment items capable of being thus identified in a recital contained herein or in any list filed with the Mortgagee or (iii) any such item is referred to or reflected in any such financing statement so filed at any time. Similarly, the mention in any such financing statement of (1) the rights in or the proceeds of any fire and/or hazard insurance policy, (2) any award in eminent domain proceedings for a taking or for loss of value or (3) the debtor's interest as lessor in any present or future lease or rights to income growing out of the use or occupancy of the Premises, whether pursuant to a lease or otherwise, shall never be construed as in any way altering any of the rights of the Mortgagee as determined by this instrument or impugning the priority of the Mortgagee's lien granted hereby or by any other recorded document, but such mention in the financing statement is declared to be for the protection of the Mortgagee in the event any court or judge shall at any time hold with respect to (1), (2) or (3) that notice of the Mortgagee's priority of interest, to be effective against a particular class of persons, including but not limited to the Federal government and any subdivisions or entity of the Federal government, must be filed in the Uniform Commercial Code records.

b)    That the Mortgagor hereby authorizes the Mortgagee, without the signature of the Mortgagor, to execute and file financing statements in order to perfect its security interest in any fixtures, chattels or articles of personal property covered by this Mortgage, and shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation, execution and filing of such statements and any continuation statements that may be filed by the Mortgagee.

**1.10    Assignment of Leases and Rents and Lease Covenants.**

a)    That the Mortgagor hereby assigns to the Mortgagee, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to the Mortgagee an executed counterpart of each such lease or other document. Nothing contained in the foregoing sentence shall be construed to bind the Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on the Mortgagee (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Premises), except that the Mortgagee shall be accountable for any money actually received pursuant to such assignment. The Mortgagor hereby further grants to the Mortgagee the right (a) to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits; (b) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Mortgagee; (c) to let the Premises, or any part thereof, and (d) to apply said rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. Such assignment and grant shall continue in effect until the indebtedness secured by this Mortgage is paid, the execution of this Mortgage constituting and evidencing the irrevocable consent of the Mortgagor to the

11

entry upon and taking possession of the Premises by the Mortgagee pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The Mortgagee, however, grants to the Mortgagor a license to collect and receive the rents, issues and profits of the Premises until the occurrence of a default by the Mortgagor under any of the covenants, conditions or agreements contained in this Mortgage. The Mortgagor agrees to hold said rents, issues and profits as a trust fund for the benefit of the Mortgagee and to apply the same as required by the Mortgagee in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, water rates, sewer rents and carrying charges becoming due against the Premises. Such license of the Mortgagor to collect and receive said rents, issues and profits may be revoked by the Mortgagee upon any such default by the Mortgagor without notice to the Mortgagor of such revocation. In the event of any default under this Mortgage, the Mortgagor will pay monthly in advance to the Mortgagee, on its entry into possession pursuant to the foregoing grant, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment will vacate and surrender the possession of the Premises or such part thereof, as the case may be, to the Mortgagee or to such receiver, and, in default thereof, may be evicted by summary proceedings.

b)    That the Mortgagor shall not enter into any lease for all or any portion of the Premises without the prior written consent of the Mortgagee.

c)    That the Mortgagor has no right or power, as against the Mortgagee without its prior written consent, to cancel, abridge or otherwise modify the leases or subleases of the Premises or any of the terms, provisions or covenants thereof or to accept prepayments of installments of rent to become due thereunder and the Mortgagor shall not do so without such consent. This agreement, insofar as it affects any lease or sublease which is not primarily for the residential purposes of the owner of the leasehold estate and which, at the date hereof, has an unexpired term of not less than five (5) years, is made with reference to Section 291-f of the Real Property Law. Upon notice and demand, the Mortgagor will, from time to time, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to the Mortgagee, in form satisfactory to the Mortgagee, one or more separate assignments (confirmatory of the general assignment provided in Article 16 hereof) of the lessor's interest in any lease or sublease now or hereafter affecting the whole or any part of the Premises, or one or more agreements pursuant to said Section 291-f, restricting the Mortgagor's right or power, as against the Mortgagee, without its consent, to cancel, abridge or otherwise modify, or accept prepayments of installments of rent to become due under, any lease or sublease hereafter in existence, which is of the character described in the second sentence of this Article. The Mortgagor shall pay to the Mortgagee on demand any expenses incurred by the Mortgagee in connection with the preparation and recording of any such assignment or agreement. With respect to any lease referred to in this Article, or which at any time is covered by any such agreement or any such assignment of lessor's interest in such lease, the Mortgagor will (i) fulfill or perform each and every condition and covenant of the same to be fulfilled or performed by the landlord thereunder, (ii) give prompt notice to the Mortgagee of any notice of default by the landlord thereunder

12

received by the Mortgagor together with a complete copy of any such notice, and (iii) enforce, short of termination thereof, the performance or observance of each and every covenant and condition thereof by the lessee thereunder to be performed or observed.

d)   Each and every covenant on the part of Mortgagor contained in any assignment of lessor's interest in leases or any assignment of rents, royalties, issues, revenues, profits, income or other benefits made collateral hereto is made an obligation of Mortgagor hereunder as if fully set forth herein.

**1.11   After-Acquired Property.** To the extent permitted by and subject to applicable law, the lien of this Mortgage will automatically attach, without further act, to all after-acquired property located in, on, or attached to, or used, or intended to be used, in connection with, or with the renovation of, the Mortgaged Property or any part thereof; provided, however, that, upon request of Lender, Mortgagor shall execute and deliver such instrument or instruments as shall reasonably be requested by Lender to confirm such lien, and Mortgagor hereby appoints Lender its attorney-in-fact to execute all such instruments, which power is coupled with an interest and is irrevocable.

**1.12   Expenses.** Unless otherwise agreed in writing, Mortgagor will pay when due and payable all appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title policy fees, escrow fees, attorneys' fees, court costs, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character which have been incurred or which may hereafter be incurred by Lender in connection with: **(a)** the preparation and execution of the Loan Documents; **(b)** the funding of the Loan; **(c)** in the event an Event of Default occurs hereunder or under the Note or any of the Loan Documents, all costs, fees and expenses, including, without limitation, all reasonable attorneys' fees in connection with the enforcement under the Note or foreclosure under this Mortgage, preparation for enforcement of this Mortgage or any other Loan Documents, whether or not suit or other action is actually commenced or undertaken; **(d)** enforcement of this Mortgage or any other Loan Documents; **(e)** court or administrative proceedings of any kind to which Lender may be a party, either as plaintiff or defendant, by reason of the Note, the Mortgage or any other Loan Documents; **(f)** preparation for and actions taken in connection with Lender's taking possession of the Mortgaged Property; **(g)** negotiations with Mortgagor, its beneficiary, or any of its agents in connection with the existence or cure of any Event of Default or default; **(h)** any proposed refinancing by Mortgagor or any other person or entity of the debt secured hereby; **(i)** the transfer of the Mortgaged Property in lieu of foreclosure; **(j)** inspection of the Mortgaged Property pursuant to Section 1.15; and **(k)** the approval by Lender of actions taken or proposed to be taken by Mortgagor, its beneficiary, or other person or entity which approval is required by the terms of this Mortgage or any other of the Loan Document. Mortgagor will, upon demand by Lender, reimburse Lender or any takeout lender for all such expenses which have been incurred or which shall be incurred by either of them; and will indemnify and hold harmless Lender from and against, and reimburse it for, the same and for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including, without limitation, attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by it by reason of, on account of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Mortgaged Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, or with this Mortgage or the Indebtedness.

**1.13   Lender's Performance of Defaults.** If Mortgagor defaults in the payment of any tax,

13

Assessment, encumbrance or other Imposition, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition, agreement or term in this Mortgage, the Note or in any of the Loan Documents, Lender may, without obligation to do so, to preserve its interest in the Mortgaged Property, perform or observe the same, and all payments made (whether such payments are regular or accelerated payments) and costs and expenses incurred or paid by Lender in connection therewith shall become due and payable immediately. The amounts so incurred or paid by Lender, together with interest thereon at the default rate, as provided in the Note, from the date incurred until paid by Mortgagor, shall be added to the Indebtedness and secured by the lien of this Mortgage to the extent permitted by law. Lender is hereby empowered to enter and to authorize others to enter upon the Mortgaged Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition, agreement or term, without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor.

**1.14    Financial Statements, Books, and Records.** Mortgagor will furnish to Lender, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Mortgaged Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Mortgaged Property, the portion or portions of the Mortgaged Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

**1.15    Inspection.** Lender, and any persons authorized by Lender, shall have the right, at Lender's option, to enter and inspect the Premises during the fourth (4th) month and at all other reasonable times during the term of the Loan. Mortgagor shall pay any professional fees and expenses, which may be incurred by Lender in connection with such inspection.

**1.16    Loan to Value Covenant.** If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Mortgaged Property, is greater than eighty percent (80%) of the value of the Mortgaged Property, as determined by Lender based upon Lender's review of any appraisal and such other factors as Lender may deem appropriate, then Mortgagor shall within thirty (30) days following a request by Lender, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than eighty percent (80%) of the value of the Mortgaged Property. The inability of Mortgagor to reduce the principal balance of the Note within thirty (30) days following request by Lender shall be, at Lender's option, an Event of Default, hereunder.

## ARTICLE TWO: DEFAULTS

**2.01 Event of Default.** The term "Event of Default" or "default" wherever used in this Mortgage, shall mean anyone or more of the following events: (a) failure by Mortgagor to pay any installment of principal and/or interest under the Note within ten (10) days after the same becomes due and payable; (b) failure by Mortgagor to observe or perform, or upon any default in, any other covenants, agreements or provisions herein, in the Note, or in any of the Loan Documents; (c) failure by Mortgagor to pay any Imposition, Assessment, other utility charges on or lien against the Mortgaged Property; (d) failure by Mortgagor to keep in force the insurance required in this Mortgage;

(e) failure by Mortgagor to either deliver the policies of insurance described in this Mortgage or to pay the premiums for such insurance as provided herein; (f) failure by Mortgagor to pay any installment, which may not then be due or delinquent, of any Assessment for local improvements for which an official bill has been issued by the appropriate authorities and which may now or hereafter affect the Mortgaged Property, and may be or become payable in installments; (g) the actual or threatened waste, removal or demolition of, or material alteration to, any part of the Mortgaged Property, except as permitted herein; (h) the vesting of title, or any sale, conveyance, transfer, leasing, assignment or further encumbrance in any manner whatsoever of any interest in the Mortgaged Property, or any part thereof, in or to anyone other than the present owner, or any change in title or ownership of the Mortgaged Property, or any part thereof, without the prior written consent of Lender; (i) all or a material portion of the Mortgaged Property being taken through condemnation, eminent domain, or any other taking such that Lender has reason to believe that the remaining portion of the Mortgaged Property is insufficient to satisfy the outstanding balance of the Note, or the value of the Mortgaged Property being impaired by condemnation, eminent domain or any other taking, (which term when used herein shall include, but not be limited to, any damage or taking by any governmental authority or any other authority authorized by the laws of any state or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently; (j) the merger or dissolution of Mortgagor or the death of any guarantor of the Note ("Guarantor"); (k) any representation or warranty of Mortgagor or Guarantor made herein or in any such guaranty or in any certificate, report, financial statement, or other instrument furnished in connection with the making of the Note, the Mortgage, or any such guaranty, shall prove false or misleading in any material respect; (l) Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets; (m) Mortgagor files, or becomes the subject of, a petition in bankruptcy, or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Mortgagor, provided however, that Mortgagor shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed; (n) the Mortgaged Property becomes subject to (1) any tax lien which is superior to the lien of the Mortgage, other than a lien for local real estate taxes and assessments not due and payable or (2) any mechanic's, materialman's, or other lien which is, or is asserted to be, superior to the lien of the Mortgage and such lien shall remain undischarged for thirty (30) days, (o) Mortgagor fails to promptly cure any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property; (p) in the event of any material adverse change in the financial condition of Mortgagor; or (q) any of the aforementioned events occur with respect to any Guarantor.

## ARTICLE THREE: REMEDIES

In the event that an Event of Default or default shall have occurred, the remedies available to Lender include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to Lender shall include, but not be limited to, any one or more of the following:

    **3.01**    **Acceleration of Maturity.** If an Event of Default shall have occurred, Lender may, at its option, declare without demand or notice all of the outstanding Indebtedness to be due and payable immediately, and upon such declaration such Indebtedness shall immediately become and

be due and payable without demand or notice.

**3.02    Lender's Right to Enter and Take Possession.** If an Event of Default shall have occurred, Mortgagor, upon demand on Lender, shall forthwith surrender to Lender the actual possession of the Mortgaged Property and Lender itself, or by such officers or agents as it may appoint, may enter and take possession of the Mortgaged Property, collect and receive the rents and income therefrom, and to apply so much of said rents and income as may be required in the necessary expenses of running said Premises, including reasonable attorneys' fees, management agents' fees, and if the Lender manages the Premises with its own employees, an amount equal to the customary management agents' fees charged for similar property in the area where the Premises are located, and to apply the balance of said rents and income to the payment of the amounts due upon said Note, or in payment of taxes assessed against the Premises, or both. And for this purpose, and in case of such default, the Mortgagor hereby assigns, transfers and sets over to the Lender the rents and income accruing from said Premises. Nothing contained in the foregoing provisions shall impair or affect any right or remedy which the Lender right now or hereafter have, were it not for such provisions, but the rights herein given shall be in addition to any others which the Lender may have hereunder.

**3.03    Receiver.** If an Event of Default shall have occurred, Lender, to the extent permitted by law and without regard to the value or occupancy of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Mortgaged Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Mortgaged Property as security for the amounts due Lender, or the solvency of any person or limited liability company liable for the payment of such amounts.

**3.04    Waiver of Appraisement, Valuation, Stay, Exemption, and Redemption Laws, etc.; Marshaling.** Mortgagor agrees to the full extent permitted by law that after an Event of Default neither Mortgagor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, exemption, moratorium, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, any and all right to have the assets comprising the Mortgaged Property marshaled upon any foreclosure hereof.

**3.05    Suits to Protect the Property.** Lender shall have the power and authority to institute and maintain any suits and proceedings as Lender may deem advisable in order to **(a)** prevent any impairment of the Mortgaged Property, **(b)** foreclose this Mortgage, **(c)** preserve and protect its interest in the Mortgaged Property, and **(d)** to restrain the enforcement of, or compliance with, any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Lender's interest. Furthermore, Mortgagor understands and agrees that MERS holds only legal title to the rights granted by Mortgagor in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right **(a)** to exercise any or all of the aforementioned rights, including, but not limited to, the right to foreclosure and sell the Property; and **(b)** to take any action required of Lender including, but not limited to, releasing and canceling this security instrument.

16

**3.06    Proofs of Claim.** In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case or proceeding affecting Mortgagor, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness at the date of the institution of such case or proceeding, and for any additional amounts which may become due and payable by Mortgagor after such date.

**3.07    Application of Monies by Lender.** After the occurrence of an Event of Default, any monies collected or received by Lender shall be applied in such priority as Lender may determine in its sole and absolute discretion, to such matters including, but not limited to, the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Lender, to deposits for Impositions and Insurance and insurance premiums due, to the cost of insurance, Impositions, Assessments, and other charges and to the payment of the Indebtedness.

**3.08    No Waiver.** Notwithstanding any course of dealing or course of performance, neither failure nor delay on the part of Lender to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

**3.09    No Waiver of One Default to Affect Another.** No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Lender (a) grants forbearance or an extension of time for the payment of any of the Indebtedness; (b) takes other or additional security for the payment thereof; (c) waives or does not exercise any right granted in the Note, this Mortgage or any other of the Loan Documents; (d) releases any part of the Mortgaged Property from the lien of this Mortgage or any other of the Loan Documents or releases or any party liable under the Note; (e) consents to the filing of any map, plat or replat of the Premises; (f) consents to the granting of any easement on the Premises; or (g) makes or consents to any agreement changing the terms of this Mortgage or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under this Mortgage or otherwise of Mortgagor, or any subsequent purchaser of the Mortgaged Property or any part thereof or any maker, co-signer, endorser, surety or guarantor. No such act or omission shall preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by Lender, shall the lien of this Mortgage be altered thereby.

**3.10    Remedies Cumulative.** No right, power or remedy conferred upon or reserved to Lender by the Note, this Mortgage or any other of the Loan Documents is exclusive of any other right, power and remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other of the Loan Documents, or now or hereafter existing at law, in equity or by statute.

**3.11    Interest after Event of Default; Default Rate.** If an Event of Default shall have

occurred, all sums outstanding and unpaid under the Note and this Mortgage shall, at Lender's option, bear interest at the default rate set forth in the Note.

## ARTICLE FOUR: MISCELLANEOUS PROVISIONS

**4.01    Heirs, Successors and Assigns Included in Parties.** Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Lender shall bind and inure to the benefit of their respective heirs, successors and assigns, whether so expressed or not.

**4.02    Addresses for Notices, etc.**

(a)    Any notice, report, demand or other instrument authorized or required to be given or furnished under this Mortgage shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, as follows:

MORTGAGOR:    **HAPPY HOME LIFE LLC**

MORTGAGEE:    Mortgage Electronic Registration Systems, Inc.
1901 E. Voorhees Street, Suite C
Danville, IL 6184
P.O. Box 2026, Flint, MI 48501-2026

**Copy to:**

LENDER:    **INSULA CAPITAL GROUP LLC ISAOA/ATIMA**
627 Horseblock Road
Farmingville, NY 11738

(b)    Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

**4.03    Headings.** The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

**4.04    Provisions Subject to Applicable Laws; Severability** All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid or unenforceable. In the event that any of the covenants, agreements, terms or provisions contained in the Note, or in this Mortgage or in any other Loan Documents shall be deemed invalid, illegal or unenforceable in any respect by a court with appropriate jurisdiction, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other Loan Documents shall be in no way affected, prejudiced or disturbed thereby.

**4.05 Modification.** This Mortgage, the Note, and all other Indebtedness are subject to modification. Neither this Mortgage, nor any term hereof, may be changed, waived, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge, or termination is sought.

**4.06 Governing Law. THIS MORTGAGE IS MADE BY MORTGAGOR AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE MORTGAGED PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED. TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (BUT THE FOREGOING SHALL NOT BE CONSTRUED TO LIMIT LENDER'S RIGHTS WITH RESPECT TO SUCH SECURITY INTEREST CREATED IN THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED).**

**4.07 Prejudgment Remedies. THE MORTGAGOR HEREBY REPRESENTS, COVENANTS, AND AGREES THAT THE PROCEEDS OF THE LOAN SECURED BY THIS MORTGAGE, AND EVIDENCED BY THE LOAN AGREEMENT, AND THE NOTE SHALL BE USED FOR GENERAL COMMERCIAL PURPOSES AND THAT SUCH LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF NEW YORK. THE MORTGAGOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS INCLUDING, WITHOUT LIMITATION, NEW YORK GENERAL STATUTES PERTAINING TO THE EXERCISE BY THE LENDER OF SUCH RIGHTS AS THE LENDER MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE THE MORTGAGOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF THE MORTGAGOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST THE MORTGAGOR. THE MORTGAGOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE LENDER TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY THE LENDER, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES, OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY THE LENDER. FURTHER, THE MORTGAGOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.**

**4.08   Effects of Changes and Laws Regarding Taxation.** In the event of an enactment of any law deducting from the value of the Mortgaged Property any mortgage lien thereon, or imposing upon Lender the payment of any or part of the Impositions, charges, or Assessments previously paid by Mortgagor pursuant to this Mortgage, or change in the law relating to the taxation of mortgages, debts secured by mortgages or Lender's interest in the Mortgaged Property so as to impose new incidents of taxes on Lender, then Mortgagor shall pay such Impositions or Assessments or shall reimburse Lender therefor; provided that, however, if in the opinion of counsel to Lender such payment cannot lawfully be made by Mortgagor, then Lender may, at Lender's option, declare all of the sums secured by this Mortgage to be immediately due and payable without prior notice to Mortgagor, and Lender may invoke any remedies permitted by applicable law.

**4.09   Purpose of Loan.** Mortgagor represents and warrants that the proceeds from this Loan are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Mortgagor acknowledges that Lender has made this Loan to Mortgagor in reliance upon the above representation. Said representation will survive the closing and repayment of the Loan.

**4.10   Duplicate Originals.** This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**4.11   Usury Laws.** This Mortgage, the Note, and the other Loan Documents are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate permitted by applicable law. If, by the terms of this Mortgage, the Note, or any of the Loan Documents, Mortgagor is at any time required or obligated to pay interest on the debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

**4.12   Construction.** This Mortgage and the Note shall be construed without regard to any presumption or other rule requiring construction against the party causing this Mortgage and the Note to be drafted.

**4.13   Release of Mortgage.** If all of Mortgagor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents and all amounts due under the Mortgage and accompanying loan documents are paid in full, no Default then exists hereunder and no Event of Default then exists under any other Loan Document, and if Mortgagor shall well and truly perform all of Mortgagor's covenants contained herein, then this conveyance shall become null and void and be released, and the Mortgaged Property shall be released to Mortgagor, at Mortgagor's request and expense.

**4.14   Entire Agreement.** This Mortgage, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Mortgage, Mortgagor acknowledges that it is not relying on anytion, warranty, covenant, promise, assurance, or other

20

statement of any kind made by the Lender or by any employee or agent of the Lender.

**4.15   Provisional Remedies: Foreclosure And Injunctive Relief:** Nothing shall be deemed to apply to limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in action bought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding

**4.16   State Specific Provisions.**

Foreclosure. Lender may institute an action to foreclose this Mortgage against the Mortgaged Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default, and thereafter at the Default Rate specified in the Note, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums which may have been loaned by Lender to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Lender for taxes, water or sewer rents, charges or claims, payments on prior liens, completion of construction of improvements, insurance or repairs to the Mortgaged Property, all costs of suit, together with interest at such Default Rate on any judgment obtained by Lender from and after the date of any foreclosure sale until actual payment is made as of the full amount due Lender, and reasonable attorneys' fees for collection, or Lender may foreclose only as to the sum past due with interest and costs as above provided, without injury to this Mortgage or the displacement or impairment of the remainder of the lien thereof, and at such foreclosure sale the Mortgaged Property shall be sold subject to all remaining items of Indebtedness; and Lender may again foreclose, in the same manner, as often as there may be any sum past due. In the event Lender forecloses this Mortgage against the Mortgaged Property, Lender may, at its option and in its sole and absolute discretion, assume all rights (but not the obligation unless consented to by Lender) as owner of the Mortgaged Property, and to assume all rights and privileges of Mortgagor thereunder; or

If the Indebtedness shall have become due and payable, whether by lapse of time or by acceleration, then and in every such case Mortgagor confer upon Lender the authority and power to proceed to protect and enforce its rights by a suit or suits in equity or at law, either for the specific performance of any covenant or agreement contained herein or in the Loan Documents, or in aid of the execution of any power herein or therein granted, or for the foreclosure of this Mortgage by advertisement or action, or for the enforcement of any other appropriate legal or equitable remedy.

[If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Mortgagor, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Mortgaged Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Mortgaged Property at any sale. The proceeds of the sale shall be applied in the following order: (a)

to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) any excess to the person or persons legally entitled to it in accordance with the terms of this Mortgage.]

### Section 291-f Agreement.

a) This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby.

b) Mortgagor shall deliver notice of this Mortgage to any tenant (unless such notice is contained in such tenant's Lease), which notice shall be to all present and future holders of any interest in any Lease, by assignment or otherwise, and shall take such action as may now or hereafter be reasonably required to afford Lender the full protections and benefits of such Section 291-f; and

c) Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof.

### Power of Sale.

Upon the completion of any sale or sales made under or by virtue of this Mortgage, an officer of any court empowered to do so shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Lender is hereby irrevocably appointed the true and lawful attorney of Mortgagor, in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold, and for that purpose Lender may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Mortgagor hereby ratifying and confirming all that Lender shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Mortgage pursuant to any judicial or nonjudicial proceedings or any judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

Upon any sale made under or by virtue of this Mortgage pursuant to any judicial or nonjudicial proceedings or any judgment or decree of foreclosure and sale, Lender may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Obligations the net sales price after deducting therefrom (to the extent allowed by applicable law) the expenses of the sale and costs of the action and any other sums which Lender is authorized to deduct under this Mortgage.

No recovery of any judgment by Lender and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Lender hereunder, but those liens, rights, powers and remedies of Lender shall continue unimpaired as before.

**Covenant to Appointment of Receiver.** Upon an Event of Default, Mortgagor hereby covenants that Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice, and without regard to the occupancy or value of any security for the Obligations, without any showing of fraud or mismanagement on the part of Mortgagor or the

insolvency of any party bound for its payment, to the appointment of a receiver or the immediate appointment of Lender to take possession of and to operate the Mortgaged Property, and to collect and apply the rents, issues, profits and revenues thereof. The foregoing shall constitute a covenant and Lender shall be entitled to all of the rights and remedies provided in the RPL (including without limitation, §254(10) of the RPL).

**Assignment of Mortgage Lien.** Provided no Event of Default has occurred, at that time when the holder of the Note shall have been paid in full in an amount equal to the Obligations under the Loan Documents have been performed, MERS shall, upon request by Mortgagor, assign the lien of this Mortgage to a subsequent mortgagee, provided that Mortgagor shall reimburse MERS or Lender for all costs associated with that assignment (including, without limitation, reasonable attorneys' fees) and that assignment shall, otherwise, be without any cost or expense to MERS or Lender and without representation, warranty or covenants by, or recourse against, MERS or Lender.

**New York Real Property Law.** The clauses and covenants contained herein which are construed by Section 254 of the RPL shall be construed as provided in that section except as otherwise provided in this Mortgage and the additional clauses and covenants contained herein shall afford rights supplemental to and not exclusive of the rights conferred by the clauses and covenants construed by that Section 254 (or any other laws of the State of New York, including, without limitation, Sections 271 and 272 of the RPL) and shall not impair, modify, alter or defeat those rights, notwithstanding that those additional clauses and covenants may relate to the same subject matter or provide for different or additional rights in the same or similar contingencies as the clauses and covenants construed by Section 254 or other provisions of the RPL or other laws of the State of New York. Lender's rights arising under the clauses and covenants contained in the RPL and/or other laws of the State of New York and/or herein shall be separate, distinct and cumulative, and none of them shall be in exclusion of the others and no act of the Lender shall be construed as an election to proceed under any one such provision to the exclusion of any other provision, notwithstanding anything to the contrary contained herein.

**Documentary Taxes and Recording Taxes.** Mortgagor will pay all filing, registration or recording fees, together with all required recording taxes, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges (including any documentary stamp tax or intangible tax) arising out of or in connection with the execution and delivery or recording of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do (herein collectively called the "Documentary Taxes"). Mortgagor hereby agrees that, in the event that it is determined that additional Documentary Taxes are due hereon or on the Note or any other mortgage or promissory note executed in connection herewith, Mortgagor shall indemnify and hold harmless Lender for all those Documentary Taxes including all penalties and interest assessed or charged in connection therewith. Mortgagor shall pay same within ten (10) days after demand for payment from Lender and the payment of those sums shall be secured by this Mortgage and shall bear interest at the Default Rate (as defined in the Note) until paid in full.

**Lien Law.** Mortgagor, in compliance the New York Lien Law (as amended and in effect; the "NYLL"), including, without limitation Section 13 thereof, will receive the advances (including the Loan proceeds) secured hereby and will hold the right to receive those advances as a trust fund to be

applied first for the purpose of paying the cost of improvements and will apply those funds first to the payment of the cost of any improvement before using any part of the total of any advance for any other purpose.

**Trust Funds.** Mortgagor will receive the advances secured hereby and will hold the right to receive those advances as a trust fund to be applied first for the purpose of paying the cost of any improvements before using any part of those advances for any other purpose. The covenants of this Section are made subject to and in compliance with the trust fund provision of Section 13 of the NYLL.

**Future Advances.** Any and all future advances (if any), with interest thereon, shall, to the fullest extent permitted by NYLL, be secured by this Mortgage unless the parties shall otherwise agree in writing. This Mortgage secures not only existing Obligations and advances made contemporaneously with the execution hereof, but also future advances, whether obligatory, or optional, or both, to the same extent as if such future advances were made contemporaneously with the execution of this Mortgage, even if no advance is made at the time of the execution of this Mortgagor contained herein and in the Note and Loan Documents, shall be fully and faithfully performed, observed, and complied with, then this mortgage deed shall be void, but shall otherwise remain in full force and effect.

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage as of the **OCTOBER 6, 2021,**

Signed, Sealed, and Delivered in the Presence of:

**Mortgagor:**

**HAPPY HOME LIFE LLC**

BY: _____

**MARITA ROSADO, Managing Member**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK )

On **OCTOBER 6, 2021** before me, the undersigned, personally appeared **MARITA ROSADO**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

24

MICHAEL J. OZIEL
Notary Public, State of New York
No. 02OZ6333626
Qualified in Nassau County
Commission Expires 11/30/2023

## SCHEDULE A
## PROPERTY DESCRIPTION

Property address is commonly known as: **96 New Hyde Park Road, Franklin Square NY 11010**

**(Section 33 Block 397 Lots 20–21)**

## Commonwealth Land Title Insurance Company

Title Number: NLT-31791-N-21

### SCHEDULE A DESCRIPTION

All that certain plot, piece or parcel of land, situate, tying and being at Franklin Square, Town of Hempstead, County of Nassau and state of New York, Known and designated as Lot No. 20 and 21 on a certain map entitled, "Map of Addition 2 Queens Park, situated at Franklin Square, Town of Hempstead, Nassau County, NY surveyed September 1905, Thomas V. Smith C.E." and filed in the Nassau County Clerk's Office on December 22, 1905, as Old Map No. 278, New No. 2032, said lot being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Easterly side of New Hyde Park Road distant 448.4 feet Northerly from the corner forward by the intersection of the Easterly side of said New Hyde Park Road with the Northwesterly side of Court House Road;

RUNNING THENC Easterly along the Northerly side of Lot No. 19 on said map 100 feet;

RUNNING THENCE North 6 degrees 32 minutes West 40 feet along the Westerly side of Lots 31, 30 and 29 on said map;

RUNNNING THENCE Westerly along the Southerly side of Lot No. 22 on said map 100 feet to the Easterly side of New Hyde Park Road;

RUNNING THENCE South 6 degrees 32 minutes East along the Easterly side of New Hyde Park Road 40 feet to the point or place of BEGINNING.

Info: Said premises being also known as and by 96 New Hyde Park Road, Franklin Square, NY

# EXHIBIT A-3

**** Electronically Filed Document ****

Instrument Number: 2022-83469

Recorded As:        EX-M23 - ASSIGN MORT

Recorded On:        August 15, 2022

Recorded At:        09:04:24 am                Receipt Number:    2674033

Number of Pages:    6                         Processed By:      001 DMF

Book-VI/Pg:         Bk-M  VI-46790  Pg-359

Total Rec Fee(s):   $370.00

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE        $ 70.00        EX-Blocks - Mortgages - $300        $ 300.00

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 33 | 397 | 20 | | HEMPSTEAD |
| 33 | 397 | 21 | | HEMPSTEAD |

************THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell

**County Clerk Maureen O'Connell**

Mortgage Electronic Registration Systems, Inc.("MERS") as Nominee
for
Insula Capital LLC, ISAOA ATIMA

-to-

Loan Funder LLC, Series 26432

The land affected by the within
instrument Lies on the Tax Map in the
State of New York
County of Nassau
Known as and by the street address: 96 New Hyde Park
Road, Franklin Square, NY 11010
In the Town of Hempstead

**Section: 33 Block: 397 Lot: 20 & 21**

**RECORD AND RETURN TO:**

**Loan Funder LLC, Series 26432
c/o Roc Capital
645 Madison Avenue, 19th Fl.
New York, NY 10022**

## ASSIGNMENT OF MORTGAGE

**KNOW THAT Mortgage Electronic Registration Systems, Inc., (MERS, Inc.,) as nominee for INSULA CAPITAL, LLC, ISAOA ATIMA, a New York Limited Liability Company, having an address at 1901 East Voorhees Street, Suite C, Danville, IL 61834, PO Box 2026, Flint MI 48501-2026 ("Assignor"), in consideration of TEN AND 00/100 ($10.00) DOLLARS and other good and valuable consideration paid by Loan Funder LLC, Series 26432, having an address at 645 Madison Avenue, 19th Floor, New York, NY 10022 (the "Assignee"), hereby assigns unto the Assignee all of its rights, title and interest in and to that certain mortgage more particularly described on Exhibits A attached hereto and made a part thereof, affecting the premises more particularly described on Exhibits B attached hereto and made a part hereof (the "Premises") and known by the Loan Number 26432.**

HAPPY HOME LIFE LLC, in favor of Loan Funder LLC, Series 26432 in the total original principal amount of Four Hundred Eighty-Seven Thousand Two Hundred Dollars and 00/100 ($487,200.00) (the "Note"), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to successors, legal representatives and assigns of the Assignee forever.

This Assignment of Mortgage (this "Assignment") is not subject to the requirements of Section two hundred seventy-five of the real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

This Assignment is made in the ordinary course of business of the Assignor.

This Assignment is made without recourse to the Assignor and is made to and accepted by the Assignee without covenant, warranty or representation by the Assignor of any kind whatsoever, express or implied, provided, however, that the Assignor hereby represents that it (a) has not assigned, transferred, pledged, sold or hypothecated the Note and/or the Mortgage to any other person and (b) has the full right and power to sell and assign the same to the Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[Balance of page is intentionally left blank]

The word "Assignor" or "Assignee" shall be construed as if it read "Assignor" or "Assignee" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage on June _____ 14 _____, 2022.

ASSIGNOR:

**Loan Funder LLC, Series 26432**

_____

Lucas Sambrook, Authorized Signatory

STATE OF NEW YORK          )
                           )     ss.:
COUNTY OF NEW YORK         )

On the ___14___ day of ___June___ in the year 2022 before me, the undersigned, personally appeared LUCAS SAMBROOK, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within the instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

PATRICIA WONG
Notary Public, State of New York
Qualified in Queens County
Certificate in New York County
No. 01WO6027264
Commission Expires 06/28/20 23

**Exhibit A - Description of Mortgage**

*a New York Limited Liability Company*

Mortgage in the principal amount of $487,200.00 given by HAPPY HOME LIFE LLC, to Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for Insula Capital *Group* LLC, dated October 6, 2021, and recorded in the State of New York, County of Nassau and recorded on October 21, 2021, Instrument Number 2021-137761, *in Book VI- 45969 Pg. 644*

This assignment is not subject to the requirements of Section 275 of the Real Property Law, because it is an assignment within the secondary mortgage market.

[Balance of page is intentionally left blank]

## Exhibit B – Legal Description of Premises

Loan Number: 26432

All that certain plot, piece or parcel of land, situate, lying and being at Franklin Square, Town of Hempstead, County of Nassau and state of New York, Known and designated as Lot No. 20 and 21 on a certain map entitled, "Map of Addition 2 Queens Park, situated at Franklin Square, Town of Hempstead, Nassau County, NY surveyed September 1905, Thomas V. Smith C.E." and filed in the Nassau County Clerk's Office on December 22. 1905, as Old Map No. 278, New No. 2032, said lot being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Easterly side of New Hyde Park Road distant 448.4 feet Northerly from the corner forward by the intersection of the Easterly side of said New Hyde Park Road with the Northwesterly side of Court House Road;

RUNNING THENC Easterly along the Northerly side of Lot No. 19 on said map 100 feet;

RUNNING THENCE North 6 degrees 32 minutes West 40 feet along the Westerly side of Lots 31, 30 and 29 on said map;

RUNNNNING THENCE Westerly along the Southerly side of Lot No. 22 on said map 100 feet to the Easterly side of New Hyde Park Road;

RUNNING THENCE South 6 degrees 32 minutes East along the Easterly side of New Hyde Park Road 40 feet to the point or place of BEGINNING.

Info: Said premises being also known as and by 96 New Hyde Park Road, Franklin Square, NY

# **** Electronically Filed Document ****

Instrument Number:  2022-81662

Recorded As:  EX-M23 - ASSIGN MORT

Recorded On:  **August 08, 2022**

Recorded At:  02:52:23 pm

Number of Pages:  6

Book-VI/Pg:  Bk-M  VI-46779  Pg-503

Total Rec Fee(s):  $370.00

Receipt Number:  2669534

Processed By:  001 AAR

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 70.00          EX-Blocks - Mortgages - $300          $ 300.00

**Property Information:**

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 33 | 397 | 20 | | HEMPSTEAD |
| 33 | 397 | 21 | | HEMPSTEAD |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

Loan Funder LLC, Series 26432

-to-

HOF I Grantor Trust 5

The land affected by the within
instrument Lies on the Tax Map in the

State of New York

County of Nassau

Known as and by the street address: 96
New Hyde Park Road, Franklin Square,
NY 11010

In the Town of Hempstead

**Sec: 33, Block: 397, Lot: 20&21**

**RECORD AND RETURN TO:**

HOF I Grantor Trust 5
60 Livingston Avenue
EP-MD-WS3D
St. Paul, MN 55107

## ASSIGNMENT OF MORTGAGE

KNOW THAT Loan Funder LLC, a Delaware Series Limited Liability Company, on behalf of itself and Series 26432, having an address at 645 Madison Avenue, 19th Floor, New York, NY 10022 (the "Assignor"), in consideration of TEN AND 00/100 ($10.00) DOLLARS and other good and valuable consideration paid by HOF I Grantor Trust 5, having an address at 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107 (the "Assignee"), hereby assigns unto the Assignee all of its rights, title and interest in and to that certain mortgage more particularly described on Exhibit A attached hereto and made a part hereof, affecting the premises more particularly described on Exhibit B attached hereto and made a part hereof (the "Premises") and known by the Loan Number 26432.

TOGETHER with that certain Promissory Note(s) dated October 6, 2021, made by HAPPY HOME LIFE LLC, in favor of Loan Funder LLC, Series 26432 in the total original principal amount of Four Hundred Eighty-Seven Thousand Two Hundred Dollars and 00/100 ($487,200.00) (the "Note"), and the moneys due and to grow due thereon with interest; TO HAVE AND TO HOLD the same unto the Assignee and to successors, legal representatives and assigns of the Assignee forever.

This Assignment of Mortgage (this "Assignment") is not subject to the requirements of Section two hundred seventy-five of the real Property Law because the Assignee is not acting as a nominee of the Mortgagor and the Mortgage continues to secure a bonafide obligation.

This Assignment is made in the ordinary course of business of the Assignor.

This Assignment is made without recourse to the Assignor and is made to and accepted by the Assignee without covenant, warranty or representation by the Assignor of any kind whatsoever, express or implied, provided, however, that the Assignor hereby represents that it (a) has not assigned, transferred, pledged, sold or hypothecated the Note and/or the Mortgage to any other person and (b) has the full right and power to sell and assign the same to the Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State in which the Premises are located. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[Balance of page is intentionally left blank]

The word "Assignor" or "Assignee" shall be construed as if it read "Assignor" or "Assignee" whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment of Mortgage on June ___21___, 2022.

ASSIGNOR:

**Loan Funder LLC, Series 26432**

_____
Lucas Sambrook, Authorized Signatory

STATE OF NEW YORK        )
                         )   ss.:
COUNTY OF NEW YORK       )

On the __21__ day of __June__ in the year 2022 before me, the undersigned, personally appeared LUCAS SAMBROOK, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within the instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

## Exhibit A - Description of Mortgage

Mortgage in the principal amount of $487,200.00 given by HAPPY HOME LIFE LLC, to Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for Insula Capital LLC, dated October 6, 2021, and recorded in the State of New York. County of Nassau and recorded on October 21, 2021, Instrument Number 2021-137761, *in Book VI- 45969, Pg. 644.*

This assignment is not subject to the requirements of Section 275 of the Real Property Law, because it is an assignment within the secondary mortgage market.

[Balance of page is intentionally left blank]

Exhibit B – Legal Description of Premises

Loan Number: 26432

All that certain plot, piece or parcel of land, situate, tying and being at Franklin Square, Town of Hempstead, County of Nassau and state of New York, Known and designated as Lot No. 20 and 21 on a certain map entitled, "Map of Addition 2 Queens Park, situated at Franklin Square, Town of Hempstead, Nassau County, NY surveyed September 1905, Thomas V. Smith C.E." and filed in the Nassau County Clerk's Office on December 22, 1905, as Old Map No. 278, New No. 2032, said lot being more particularly bounded and described according to said map as follows:

BEGINNING at a point on the Easterly side of New Hyde Park Road distant 448.4 feet Northerly from the corner forward by the intersection of the Easterly side of said New Hyde Park Road with the Northwesterly side of Court House Road;

RUNNING THENC Easterly along the Northerly side of Lot No. 19 on said map 100 feet;

RUNNING THENCE North 6 degrees 32 minutes West 40 feet along the Westerly side of Lots 31, 30 and 29 on said map;

RUNNNING THENCE Westerly along the Southerly side of Lot No. 22 on said map 100 feet to the Easterly side of New Hyde Park Road;

RUNNING THENCE South 6 degrees 32 minutes East along the Easterly side of New Hyde Park Road 40 feet to the point or place of BEGINNING.

Info: Said premises being also known as and by 96 New Hyde Park Road, Franklin Square, NY

# EXHIBIT A-4

# GUARANTY

| | |
|---|---|
| **DATED:** | **OCTOBER 6, 2021** |
| **BORROWER:** | **HAPPY HOME LIFE LLC**<br>**244 Fifth Avenue, Ste R200**<br>**New York, NY 10001** |
| **GUARANTOR:** | **MARITA ROSADO** |
| **LENDER:** | **INSULA CAPITAL GROUP LLC ISAOA/ATIMA**<br>**627 Horseblock Road**<br>**Farmingville, NY 11738** |
| **PROPERTY:** | **96 New Hyde Park Road**<br>**Franklin Square NY 11010**<br>**Section 33 Block 397 Lots 20-21** |

**LOAN AMOUNT:**     **$487,200.00**

**WHEREAS, HAPPY HOME LIFE LLC,** a New York Limited Liability Company maintaining an address located at 244 Fifth Avenue, Ste R200, New York NY 10001 ("Borrower") has requested that Lender loan to Borrower the sum of **$487,200.00** (the "Loan") with respect to certain premises known as **96 New Hyde Park Road, Franklin Square NY 11010** more fully described in Schedule A annexed hereto, and the improvements situated thereon (such premises and improvements are collectively hereinafter referred to as the "Premises"); and

**WHEREAS,** the Loan is to be evidenced by that certain Mortgage Note of even date herewith made by Borrower to Lender ("Note") and secured by that certain Mortgage of even date herewith encumbering the Premises ("Mortgage"); and

**WHEREAS,** Guarantor, **MARITA ROSADO,** is the sole member of Borrower; and

**WHEREAS,** as part of the consideration for granting the Loan, Borrower has agreed to procure and deliver to Lender this Guaranty; and

**WHEREAS,** Borrower and Guarantor will derive substantial benefit from the making of the Loan; and

**WHEREAS,** Lender has declined to grant the Loan unless this Guaranty is duly executed by Guarantor and delivered to Lender.

**NOW, THEREFORE,** to induce Lender to make the Loan, and in further consideration of the sum of ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor agrees as follows:

1

(1)    Guarantor warrants and represents that Guarantor, **MARITA ROSADO**, is the sole member of the Borrower the making and performance of this Guaranty by Guarantor will not result in any breach of any term, condition or provision of, or constitute a default under any contract, agreement or other instrument to which Guarantor is a party or any order, writ, injunction or decree of any court or any commission, board or other administrative agency entered in any proceedings to which Guarantor is a party or by which Guarantor may be bound.

(2a)    Guarantor hereby unconditionally, absolutely and irrevocably guarantees to Lender the punctual, prompt and complete payment of (i) the outstanding Indebtedness (as hereinafter defined) and (ii) the interest which is due and payable on the amount set forth in (i), it being expressly understood and agreed that this is a continuing Guaranty and an instrument for the payment of money only, and that the obligations of Guarantor are and shall be absolute, unconditional and irrevocable under any and all circumstances without regard to the legality, binding effect, validity, regularity, or enforceability of the Note, Mortgage, or any other documents executed in connection herewith or therewith, a true copy of each of such documents Guarantor hereby acknowledges having received, reviewed and approved.

(2b)    Guarantor agrees that his liabilities under this Guaranty shall be unaffected, regardless of whether notice or consideration is given or his further consent obtained, by (i) any amendment, supplement, modification or other change in the Note or Mortgage, or any other instrument made to or with Lender by Borrower or any person or entity who succeeds Borrower as owner of the Premises, or any part thereof, (ii) any extension of time for the observance or performance required thereby, (iii) any sale, assignment or foreclosure of the Note and Mortgage, or any sale of the Premises, or any part thereof, (iv) exculpatory provisions, if any, in any of such instruments limiting Lender's recourse to property encumbered by the Mortgage or any other security or limiting Lender's rights to enforce a deficiency judgment against Borrower, (v) any release of Borrower or any Guarantor or any other person or entity from performance or observance of any of the agreements, terms, covenants or conditions contained in any of such instruments whether by operation of law or otherwise, (vi) Lender's failure to record the Mortgage or to otherwise perfect, protect, secure or insure any security interest or lien given as security for the Loan, (vii) any recovery from any Guarantor hereunder or under any other guaranty or guaranties executed in connection with the Loan, (viii) the accuracy or inaccuracy of any representations or warranties made by Borrower in the Mortgage or by Guarantor in this Guaranty or in any other documents executed by Guarantor in connection with the Loan, (ix) any bankruptcy, insolvency, liquidation, moratorium, reorganization, arrangement for the benefit of creditors, receivership, trusteeship or other law of like import affecting Borrower, the Premises, any guarantor or any of their respective successors and assigns, including, but not limited to, any automatic stay granted pursuant to any provision of a bankruptcy or similar law, (x) notwithstanding any provision to the contrary contained or implied in the Mortgage or by law or in equity, any recovery as a result of the exercise of any of Lender's rights or remedies under the Mortgage unless as a result thereof Lender has been paid the entire amount owed to Lender under the Mortgage (hereinafter such obligations owed to Lender are referred to as the "Indebtedness") and (xi) any defense given to a guarantor or surety at law or in equity.

(3)    Guarantor agrees that to the extent any amounts (i) are collected by Lender in connection with any other guaranty or guaranties which are executed by Guarantor or any other person or entity which may have or may hereafter guarantee all or part of the Indebtedness or (ii) are paid to Lender by guarantor or by any person or entity which may have or may hereafter execute any guaranty or guaranties of all or part of the Indebtedness, that regardless of the way such payments or amounts are characterized

2

by Guarantor or any other person or entity, Lender shall have the right, but not the obligation, to apply such amounts first to that part of the Indebtedness, if any, which is not covered by this Guaranty but which is covered by any other guaranty or guaranties of all or part of the Indebtedness.

(4)     Guarantor waives any and all legal requirements that Lender shall institute any action or proceedings at law or in equity against Borrower, or anyone else, or exhaust its remedies against Borrower, or anyone else in respect of the Loan, Mortgage or in respect of any other security held by Lender as a condition precedent to bringing an action against Guarantor upon this Guaranty. All remedies afforded to Lender by reason of this Guaranty are separate and cumulative remedies and no one of such remedies, whether exercised by Lender or not, shall be deemed to be an exclusion of any of the other remedies available to Lender and shall not limit or prejudice any other legal or equitable remedy which Lender may have. **This is a guaranty of payment and not of collection.**

(5)     Guarantor agrees that until each and every term, covenant and condition of this Guaranty is fully performed and fulfilled, he shall not be released by any act or thing which might, but for this provision, be deemed a legal or equitable discharge of a surety or a guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted or circumstance which may or might vary the risk or affect rights or remedies by reason of any further dealings between Borrower and Lender, whether relating to the Loan, Mortgage or otherwise, and Guarantor waives and surrenders any defense to his liabilities hereunder based upon any of the foregoing acts, omissions, agreements, waivers or any of them and also waives and relinquishes all other rights and remedies accorded by applicable law to guarantors and sureties, it being the purpose and intent of this Guaranty that the obligations of Guarantor hereunder is and that this Guaranty is absolute, irrevocable and unconditional under any and all circumstances. No amendment, modification, discharge, waiver or release of this Guaranty shall be established by conduct, custom or course or business.

(6)     Guarantor waives notice of acceptance of this Guaranty and of presentment for payment, demand, protest, and notice of protest and of dishonor, notices of default and all other notices of every kind and description now or hereafter provided by any constitution, statute or rule of law.

(7)     If Guarantor shall advance or become obligated to pay any sums with respect to this Guaranty, Mortgage or the Loan, or for any other purpose in connection with the Premises, or any part thereof, or if for any reason whatsoever Borrower or any subsequent owner of the Premises, or any part thereof, is now, or shall hereafter become, indebted to Guarantor, Guarantor agrees that the amount of such sums and of such indebtedness and all interest thereon shall at all times be subordinate as to lien, time of payment and in all other respects to all sums, including principal, interest and other amounts at any time owing to Lender under the Loan or the obligations evidencing the same or the Mortgage and that Guarantor shall not be entitled to enforce or receive payment thereof until the Indebtedness is paid in full. Nothing herein contained is intended or shall be construed to give Guarantor any right of subrogation in or under the Loan, the obligations evidencing the same, the Mortgage or any right to participate in any way therein or in the right, title or interest of Lender in or to the Premises, or any part thereof, or other mortgaged property, notwithstanding any payment made by Guarantor with respect to this Guaranty, the Mortgage or Loan, all such rights of subrogation and participation being expressly waived and released until the indebtedness is paid in full.

3

(8)     Any notice, demand or request by Lender to Guarantor shall be in writing and shall be deemed to have been duly given or made one (1) business day following the date when sent by any reputable overnight courier addressed to Guarantor at his address set forth at the foot hereof.

(9)     (a)     This Guaranty is to be construed according to the laws of the State of New York. Without limiting other methods of obtaining jurisdiction, Guarantor hereby agrees to submit to personal jurisdiction of the courts of the State of New York in any action or proceeding arising out of this Guaranty. In furtherance of such agreement, Guarantor hereby agrees and consents that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by personal service within or without the jurisdiction of any such court. The foregoing shall not be deemed a limitation of Lender's right to bring an action based on this Guaranty in any other jurisdiction.

(b)     In the event any action or proceeding be brought by Lender to enforce this Guaranty, or by or against Guarantor or Lender, or both, or Lender appears in any action or proceeding, in such event, Guarantor agrees to pay to Lender reasonable attorney's fees and court costs including attorney's fees and court costs at trial or on appeal, together with all interest at the default rate set forth in the Mortgage from the date demand is made by Lender on this Guaranty until payment in full is received.

(10) Guarantor represents and warrants that:

(a)     There are no actions, suits or proceedings pending or, to the knowledge of Guarantor, threatened against or affecting Guarantor or the properties of Guarantor before any court, governmental department, arbitrator, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, business, properties or operations of Guarantor.

(b)     Neither the business nor properties of Guarantor are affected by a fire, explosion, strike, lockout, or other labor dispute, drought, storm, hail, earthquake, embargo, acts of God or of the public enemy or other casualty (whether or not covered by insurance) which would have a material adverse effect upon the financial condition, business, properties or operations of Guarantor.

(c)     Guarantor is not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on the ability of Guarantor to carry out his obligations under this Guaranty.

(d)     No information, exhibit or report furnished by Guarantor to Lender in connection with the negotiation of this Guaranty contained as of the date of the furnishing thereof any material misstatement of fact or omitted to state a material fact necessary to make the statements contained therein not misleading.

(e)     Guarantor has the full power, legal right, authority and requisite capacity to execute and deliver this Guaranty, and to observe, perform and fulfill the provisions hereof.

4

(11)    Guarantor agrees to furnish Lender with the information with respect to the business, properties, operations or condition, financial or otherwise, of Guarantor as Lender may from time to time reasonably request.

(12)    Should Lender be obligated by any bankruptcy or other law to repay to Borrower or Guarantor or to any trustee, receiver or other representative of any of them, any amounts previously paid in respect of this Guaranty, then this Guaranty shall be reinstated to include the amount of such repayment.  Lender shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, it believes that such obligation exists.

(13)    If any action, suit or proceeding which either directly or indirectly involves the Guaranty is commenced, Guarantor waives his right to any jury trial in connection therewith.

(14)    If any of the provisions of this Guaranty, or the application thereto to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, or the application of such provision to persons or circumstances other than those as to whom or which it is held invalid or enforceable, shall not be affected thereby, and every provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

(15)    Guarantor agrees to indemnify Lender against any reasonable loss, cost or expense in the nature of costs, expenses and reasonable attorney's fees and expenses caused by the assertion by Guarantor of any unsuccessful defense to his obligations under this Guaranty.  Guarantor waives any right or claim of right to cause a marshaling of Borrower's assets or to cause Lender to proceed against any security for the Mortgage before proceeding against Guarantor.  Guarantor agrees that any payments required to be made by him hereunder shall become due in accordance with the Mortgage immediately upon the happening of any default following the expiration of any applicable grace period under the Mortgage and without presentment of the Mortgage to Borrower, demand for payment or protest thereof, or notice or nonpayment or protest thereof.

(16)    This Guaranty is separate, distinct and in addition to any liability or obligations that Guarantor may have under any other guaranty executed by Guarantor in connection with any other loan from Lender to Borrower and no other agreement or guaranty executed in connection with the Loan shall act to reduce or set off Guarantor's liability hereunder.

(17)    This Guaranty shall be binding upon the heirs, legal representatives, successors and assigns of Guarantor and shall inure to the benefit of Lender and its Affiliates, successors and assigns.

(18)    This Guaranty may not be modified, amended, discharged or otherwise changed orally, but only by an instrument in writing which is executed and delivered by Guarantor and Lender.

(19)    Guarantor acknowledges that he has received a true copy of this Guaranty, and agrees that he has executed and delivered this Guaranty to Lender, intending that Lender materially and justifiably rely thereon in connection with the Loan.

(20)    In interpreting this Guaranty, the singular shall include the plural; the plural shall include the singular; and the use of any gender shall include all genders.

5

**IN WITNESS WHEREOF**, Guarantor has duly executed this Guaranty as of the day and year first above written.

**GUARANTOR:**

**MARITA ROSADO**


STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NEW YORK  )

On **OCTOBER 6, 2021** before me, the undersigned, personally appeared **MARITA ROSADO**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

MICHAEL J. OZIEL
Notary Public, State of New York
No. 02OZ6333626
Qualified in Nassau County
Commission Expires: 11/30/2023

6